UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Talentscale, Inc.,

          Plaintiff

 v.

Aery Aviation, LLC,

          Defendant

Case No. 2:23-cv-00238-CDS-NJK

**Order Granting Motion to Dismiss and Closing Case**

[ECF No. 26]

      This is a breach-of-contract dispute between plaintiff Talentscale, a Nevada corporation, and defendant Aery Aviation, a Virginia corporation. After I granted without prejudice Aery's first motion to dismiss, Talentscale filed an amended complaint seeking to remedy the identified jurisdictional issues. Aery now moves to dismiss that amended pleading for lack of personal jurisdiction or alternatively for improper venue. Talentscale maintains that this court has personal jurisdiction over Aery. It argues that Aery purposefully availed itself of the privileges of conducting activities in Nevada by contracting with Talentscale, including a Nevada choice-of-law provision in the contract, hiring Nevada employees, and repeatedly soliciting employees and proposals from Talentscale. It also relies on the two-year duration of the parties' relationship and the amount of capital involved—$9.1 million—as further evidence supporting personal jurisdiction. Despite these arguments, Talentscale fails to meet its burden of establishing that jurisdiction is proper over this Virginia corporation that conducts no business in Nevada. A party's emphatic repetition of the forum state's name in its pleading—without more—cannot establish personal jurisdiction. I therefore grant Aery's motion to dismiss without prejudice to Talentscale's ability to re-file this case in an appropriate court.

I.  Background

  a. *Relevant facts*

  Talentscale is a disabled-veteran-owned staffing company that places veterans in jobs. Am. Compl., ECF No. 25 at ¶ 10. Aery is an aircraft procurement company that provides aerospace-related services to entities such as the United States military, federal government agencies, and foreign governments. *Id.* at ¶¶ 13–14, 17. Talentscale is a Nevada corporation with its principal place of business in Las Vegas. *Id.* at ¶¶ 2, 23. And Aery is a Virginia limited liability company with its principal place of business in Newport News, Virginia. *Id.* at ¶ 3. Talentscale admits that all of Aery's members are likewise Virginia residents. *Id.* at ¶ 3.

  In January 2021, Talentscale and Aery entered into a written contract under which Talentscale agreed to provide staffing services to Aery. *Id.* at ¶ 22. The parties decided that Nevada law would govern the agreement. *Id.* at ¶ 24. And under the agreement, Talentscale "is responsible for the workers' mandatory/statutory benefits, Workers' Compensation, Unemployment Insurance, health benefits, and federal, state and/or local taxes, and overtime hours." *Id.* at ¶ 27. Talentscale asserts that "[b]ecause the Nevada [p]laintiff's performance involved 'furnishing' the employees, [p]laintiff's performance of its responsibilities under the [a]greement occurred in the Nevada forum state." *Id.* at ¶ 29. Beginning when the contract was signed, Talentscale "furnished, deployed, and paid[] a total of 96 skilled employees to work with [Aery]." *Id.* at ¶¶ 34–35. The total amount that Talentscale billed to Aery exceeded $9.1 million. *Id.* at ¶ 37. In late 2022, Aery stopped paying Talentscale what it owed under the agreement, causing Talentscale to bring this action. *Id.* at ¶¶ 88–110. Talentscale asserts that Aery owes $760,319.20 in overdue invoices, plus late fees, costs, and reasonable attorneys' fees. *Id.* at ¶¶ 139–40.

  In its amended complaint, Talentscale includes pages of allegations detailing various emails that Aery employees sent to Talentscale to coordinate the onboarding and management of new employees. *Id.* at ¶¶ 58–87. In each allegation, Talentscale repeatedly states that Aery's

various employees "unilaterally reached into the Nevada forum state, to the Nevada [p]laintiff, pursuant to the [a]greement under Nevada law[.]" *Id.* Without explanation, Talentscale states that although the contract contains a mandatory arbitration clause, Talentscale and Aery have both waived the arbitration clause, and Aery has not invoked it. *Id.* at ¶ 108. In sum, Talentscale brings these three claims: breach of contract, unjust enrichment, and "action for account stated." *Id.* at ¶¶ 112–40.

      b.     *Procedural history*

In March of this year, Aery moved to dismiss Talentscale's original complaint, and Talentscale counter-moved to conduct limited jurisdictional discovery. ECF Nos. 14, 17. To aid me in resolving the motions, I held a hearing on April 12 after both motions were fully briefed and heard further argument from the parties about both motions. ECF Nos. 18, 24. I denied Talentscale's motion for jurisdictional discovery, but I granted Aery's motion to dismiss for improper venue. ECF No. 24. I did so without prejudice and gave Talentscale leave to file an amended complaint addressing the jurisdictional deficiencies. *Id.* If Talentscale chose to file an amended pleading, then I ordered the parties to meet and confer about the arbitration clause in the contract before filing any other dispositive motions, and I ordered them to include the results of that meet and confer in any such motion.[1] *Id.* A month after the hearing, Talentscale timely filed an amended complaint, which Aery seeks to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and alternatively under Rule 12(b)(3) for improper venue.

**II.    Legal standard**

"The Due Process Clause of the Fourteenth Amendment constrains a [s]tate's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 183

---

[1] I recognize that the minutes of the hearing did not capture this portion of my oral ruling. *See* ECF No. 24. The parties do not indicate that such a meet-and-confer ever occurred. But because the hearing minutes did not include this information, to the extent necessary, I vacate my prior order directing the parties to meet and confer on the arbitration issue. This issue can be addressed if and when this case is refiled in another court.

3

(citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). It is well established that "[f]or a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994) (citation omitted). By statute, "Nevada has authorized its courts to exercise jurisdiction over persons 'on any basis not inconsistent with . . . the Constitution of the United States.'" *Walden*, 571 U.S. at 283 (quoting Nev. Rev. Stat. § 14.065). So the jurisdictional analyses under state and federal law are the same. *Vanguard Dealer Servs., LLC v. Cervantes*, 2022 WL 2918942, at n.14 (D. Nev. July 22, 2022) (citing *Walden*, 571 U.S. at 283)).

There are two kinds of personal jurisdiction: general and specific. This order addresses the latter only.[2] Courts apply a three-part test to determine the appropriateness of specific jurisdiction over a non-resident defendant. *Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden on the first two prongs." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing *Schwarzenegger*, 374 F.3d at 802). If the

---

[2] In its amended complaint—and in the initial round of personal-jurisdiction briefing as well as at the hearing—Talentscale contends that Aery's website lists Nevada-based company Las Vegas Sands Corporation as one of its clients, which somehow subjects Aery to the jurisdiction of Nevada courts. ECF No. 25 at ¶¶ 17–21. *See also* ECF No. 16 at 2, 4–5, 8; ECF No. 16-1 at ¶¶ 17–23; ECF No. 24. As Aery points out, "[i]n its opposition brief, however, Talentscale made no mention of Las Vegas Sands, nor did it attempt to argue this [c]ourt has general jurisdiction over Aery." ECF No. 28 at 2. Talentscale includes in its amended complaint a single conclusory statement about general jurisdiction. ECF No. 25 at ¶ 6. Based on Talentscale's silence about general jurisdiction in its response and the lack of any facts indicating that Aery is "essentially at home" in Nevada, I decline to address general jurisdiction in this order and focus exclusively on the other type: specific jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117 (2014) (discussing general jurisdiction, which requires affiliations so "continuous and systematic" as to render the foreign corporation "essentially at home in the forum [s]tate").

plaintiff establishes both of the first two prongs, then "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citations omitted). A plaintiff's failure to meet the first prong means that "the jurisdictional inquiry ends and the case must be dismissed." *Id.* (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)). The first prong requires that "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). The second prong requires that "the claim must be one which arises out of or relates to the defendant's forum-related activities," and the third mandates that "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802).

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto*, 539 F.3d at 1015 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the court resolves the motion without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts." *Id.* (quoting *Sher*, 539 F.3d at 1015). "Uncontroverted allegations in the plaintiff's complaint must be taken as true." *Id.* (citing *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 800).

### III.     Discussion

My analysis begins and ends with the first prong of the three-part test: purposeful availment. "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Boschetto*, 539 F.3d at 1016 (quoting *Sher*, 911 F.2d at 1362). Courts view a non-resident defendant's contract or other business in the forum through

a "rather practical and pragmatic" lens, not a "rigid and formalistic" one. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *Lake*, 817 F.2d at 1421). And the United States Supreme Court has been clear that "the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Id.* (citing *Burger King*, 471 U.S. at 478). But that is exactly the situation here.

Nothing more than the signing of a contract with a Nevada plaintiff ties Aery to Nevada. The two parties signed a contract under which Talentscale agreed to provide staffing to Aery. Nothing indicates that Aery executed the contract in Nevada or traveled to Nevada for the negotiations. Walton Decl., ECF No. 14-4. Further, all three of Aery's members are Virginia residents, and none of them owns property in Nevada or conducts business here. Walton Decl., ECF No. 14-1; Dynan Decl., ECF No. 14-2; Beale Decl., ECF No. 14-3; ECF No. 14-4. Similarly, Aery maintains no property in Nevada, is not registered to do business in Nevada, and does not have an agent appointed to receive process in Nevada. ECF No. 14-4. Talentscale does not dispute any of these assertions. Rather, in its response to Aery's motion to dismiss, Talentscale maintains that this court has personal jurisdiction over Aery because Talentscale's own "performance occurred in Nevada[,] and the damages [Talentscale] sustained as a result of [Aery's] non-payment were also incurred in Nevada." ECF No. 27 at 10. It also contends that Aery "repeatedly, systematically, and unilaterally solicited [Talentscale's] business" and "submitted proposals and requisitions, negotiated rates, and coordinated consummation of staffing deployments." *Id.* at 10–11. Finally, Talentscale insists that the inclusion of a Nevada choice-of-law provision in the contract put Aery on notice that it could be subject to litigation in Nevada. *Id.* at 11–13.

Talentscale's first two arguments are unavailing. The United States Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum [s]tate." *Walden*, 571 U.S. at 284 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). "Put

6

simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). What matters for this analysis is not whether Talentscale had contacts with Nevada, but whether Aery did. Consistent with longstanding case law, I reject Talentscale's assertions that its own performance under the contract in Nevada or its incurring of damages in Nevada somehow imputed jurisdiction onto Aery.

Courts look "to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *Id.* at 285. The Supreme Court emphasizes that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum [s]tate that is the basis for its jurisdiction over him." *Id.* (citations omitted). And, crucially, "[d]ue process requires that a defendant be haled into court in a forum [s]tate based on his own affiliation with the [s]tate, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the [s]tate." *Id.* (quoting *Burger King*, 471 U.S. at 475). This invalidates Talentscale's argument as to Aery's repeated contacts with Talentscale about hiring additional staff, negotiating rates, and seeking Talentscale's business. The pages of allegations in Talentscale's amended complaint detailing emails that Aery sent to Talentscale lend no support to this argument. All Talentscale alleges are contacts between Aery and Talentscale—not between Aery and Nevada. This is insufficient to establish personal jurisdiction over Aery.

Lastly, I turn to the agreement's choice-of-law provision. It has long been established that a choice-of-law provision "standing alone would be insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482. In *Burger King v. Rudzewicz*, the Supreme Court recognized that choice-of-law provisions should be considered in jurisdictional analyses. *Id.* The Court ultimately decided that the choice-of-law provision in that case, "when combined with the 20-year interdependent relationship" of the parties, "reinforced" the defendant's "deliberate affiliation with the forum [s]tate and the reasonable foreseeability of possible litigation there." *Id.* But as

Aery puts it, the "something more" (in addition to the choice-of-law provision) is missing here. ECF No. 26 at 10. Having disregarded Talentscale's contentions about Aery's contacts with Talentscale and Talentscale's own contacts with Nevada, all that remains is the choice-of-law provision, indicating that Nevada law would apply to any dispute between the parties. If it were instead a forum selection clause, that would perhaps lend more weight to Talentscale's argument that Aery anticipated litigation in Nevada, but that is not the case here. *See, e.g., Gunn v. Wild*, 2018 WL 473005, at *6 (D. Nev. Jan. 18, 2018). Without more, the choice-of-law provision is inadequate to confer personal jurisdiction over Aery.

It is true, as Talentscale urges, that "[u]ncontroverted allegations *in the complaint* are accepted as true and any conflicts in the parties' affidavits are resolved in the plaintiff's favor 'for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" ECF No. 27 at 6 (quoting *AT&T Co.*, 94 F.3d at 588–89) (emphasis added). Notably absent from Talentscale's amended complaint is any mention of where the contracted staffing services were provided. The closest it gets to identifying the location the services were provided is its reference to some of the quoted emails from Aery showing that workers were stationed in California at North Island (near San Diego); generally "on [the] East & West Coasts"; and in Cleveland, Ohio. *Id.* at ¶¶ 62, 70, 73. In contrast, Aery contends that Talentscale never provided staffing to Aery on any project or at any location in Nevada and maintains that all staffing services under the contract were provided in Virginia. ECF No. 26 at 9, 11 (citing ECF No. 14-4 at ¶ 5, ECF No. 19-1 at ¶ 5). In a declaration filed earlier in this case, Talentscale refutes Aery's declaration as "inaccurate" and insists that "the staffing services performed by Talentscale were provided in Nevada and not Virginia" because they were "undertaken, sourced, deployed, and paid by Talentscale, the Nevada corporation." Ulmer Decl., ECF No. 16-1 at ¶ 28. Even resolving the affidavits' conflicts in Talentscale's favor, I do not find that Aery purposefully availed itself of the privilege of doing business in Nevada. The amended complaint makes clear that Talentscale provided Nevada-based employees to Virginia-based Aery, which then staffed those individuals on various

projects throughout the United States—but notably, not in Nevada. Nothing in the complaint tethers Aery to Nevada such that it would reasonably anticipate litigation here.

"However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that [s]tate that are a prerequisite to its exercise of power over him." *Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (citing *Int'l Shoe*, 326 U.S. at 319). Such minimum contacts are lacking here. Despite its multitude of arguments, Talentscale fails to carry its burden of establishing that Aery purposefully availed itself of the privilege of doing business in Nevada. Because Talentscale does not meet its burden as to the first prong of the personal-jurisdiction test, I need not and do not address the other two prongs—whether the claim arose out of Aery's forum-related activities and whether jurisdiction would be reasonable. And because this court lacks specific jurisdiction over Aery, I grant its motion to dismiss without prejudice to Talentscale's ability to refile this case in the proper forum.

## IV.   Conclusion

IT IS THEREFORE ORDERED that Aery's motion to dismiss **[ECF No. 26] is GRANTED** without prejudice to Talentscale's ability to re-file this case in the appropriate court. The Clerk of Court is directed to CLOSE THIS CASE.

DATED: August 1, 2023

_____
Cristina D. Silva
United States District Judge